Frederick B. Hill, Jr. v. Commissioner.
Hill v. Commissioner
Docket No. 32356.
United States Tax Court
1953 Tax Ct. Memo LEXIS 185; 12 T.C.M. (CCH) 757; T.C.M. (RIA) 53233; June 30, 1953
*185 Held: The business organization known as Yardley Industries and/or Hill industries was, during the taxable year, a partnership between petitioner and other parties involved. Roger K. Powell, Esq., 17 South High Street, Columbus, Ohio, for the petitioner. Lyman G. Friedman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax of petitioner for the year 1945 in the amount of $50,664.62. Certain *186 minor adjustments made by respondent and assigned as error in the petition as filed have been abandoned. There remains for our consideration petitioner's allegation that respondent erred in refusing to recognize the business organization known as Yardley Industries and/or Hill Companies, during the taxable year as a valid partnership for tax purposes. The case was submitted upon a partial stipulation of facts with exhibits attached, and oral testimony. Findings of Fact All facts stipulated are so found and made a part hereof. Petitioner is an individual residing in Bexley, Ohio. He filed his income tax return for the year here under review with the collector of internal revenue for the eleventh district of Ohio at Columbus. The petitioner has, for many years prior to 1945, been engaged in business in the city of Columbus, Ohio. In 1932, he acquired the Yardley Screen and Weather Strip Company, a corporation which was then in receivership, and operated this business until 1936, in which year the corporation was dissolved. Thereafter, petitioner continued the operation of the business as a sole proprietor to and including the year 1943. After 1936 and prior to 1943, petitioner *187 engaged in various other businesses as a sole proprietor, in addition to the screen and weather strip business. These businesses included Yardley Plastics Company, manufacturing plastic products; The Yardley Insulation Company; Yardley Venetian Blind Company; Yardley Industries, which was primarily a contractor with the government; and S & W Moulding Company, a distributor of plastic mouldings and edgings. Prior to December 31, 1943, petitioner operated these businesses in association with certain parties who were in charge of production and distribution. Such associates were employees whose compensation was measured in whole or in part by the net profits realized from the businesses in which they were employed. None of these business associates, with the exception of Walter E. Jacobson, was a party to the partnership agreements entered into in 1944 and thereafter, and which are here involved. On or about December 31, 1943, petitioner entered into an agreement with Elizabeth G. Hill, his wife; Mrs. James S. Gibson, his mother-in-law; Frederick B. Hill, Sr., his father; L. Draper Hill, his brother; and Walter E. Jacobson, his business associate, who was the only one not related to *188 petitioner by blood or by marriage. This agreement purported to form a partnership to be known as Yardley Industries, to operate all of the businesses theretofore operated by petitioner as the sole proprietor. The partnership agreement thus executed recites the purchase from petitioner by the other parties thereto of 45 per cent of his interest in the business, and provides that the parties become co-partners for a term of 25 years to operate a general manufacturing business under the name of Yardley Industries. It provides further that the petitioner shall be a general partner having full charge of the business and should exercise all powers in connection with its operation, and that Jacobson should act as general manager of the partnership, devoting his entire time thereto, with authority to make contracts only for the purchase of materials in the normal course of business. None of the other parties to the agreement were to be required to devote any time to the business. All parties, except petitioner, were to be limited partners and not general partners, and without liability for debts of the partnership in excess of their respective interests in the property and assets of the *189 partnership. Profits were to be divided in accordance with the percentage of ownership of assets at the time of the formation which percentages were to be as follows: Frederick B. Hill, Jr.
55%
Elizabeth G. Hill
25%
Walter E. Jacobson
4%
Mrs. James S. Gibson
12%
Frederick B. Hill, Sr.
2%
L. Draper Hill
2% The partnership could be dissolved by any partner, effective in three months from the giving of notice. Upon dissolution an inventory and appraisal of all assets and property of the business was to be made and such assets divided among the partners in accordance with their proprietary interest in the partnership. The partnership articles were never recorded. The purported partners purchased their alleged interests from petitioner by giving him notes for the amount of their purchases. Thereafter, the notes were paid off by the following method of finance: Elizabeth G. Hill gave a note to petitioner for $46,250. On March 29, 1944, she borrowed $10,000 from the City National Bank & Trust Company (hereinafter called City) of Columbus, Ohio, pledging as collateral therefor 133 shares Midland Grocery 8% preferred stock. These stock shares, having an aggregate *190 value of $13,300, had been given to Elizabeth G. Hill on or about September 1, 1942, by petitioner as a gift. On April 4, 1944, Mrs. Hill borrowed an additional $10,000 from the same bank pledging as collateral therefor 110 shares of Midland Grocery common stock. These shares had been sold to her in February, 1942, by petitioner at book value, or $11,000. On May 12, 1944, an additional loan of $26,000 was given Mrs. Hill, the collateral pledged on the preceding loans being likewise pledged to secure this loan. Jacobson and his wife, on May 10, 1944, made an unsecured loan from City in the amount of $8,050. On August 10, 1945, an unsecured loan for $8,000 was made to Mrs. James S. Gibson by City. This loan was paid off on October 3, 1945. The same bank, on September 10, 1945, also made an unsecured loan to Frederick B. Hill, Sr., and L. Draper Hill in the amount of $13,000. All of the foregoing unsecured loans were made by City on the basis of personal financial statements submitted by each of the borrowers. In the case of Elizabeth G. Hill, the loan was made on the basis of her personal financial statement and the collateral pledged. The lender knew the transactions to which proceeds *191 of the loans were to be put. Petitioner was not a maker or an endorser of any of the notes, although he introduced all of the borrowers except Jacobson and participated in the discussion and negotiation of the loans. The proceeds of all of the loans were paid to petitioner as a part or all of the purported interests of the parties involved. These amounts were retained by petitioner in his own personal bank account, and were turned over to the business only when and if petitioner deemed it advisable. During the calendar years 1944 and 1945, all partnership distributions were used by the respective parties to apply on the purported purchase price of their interests, to pay their income taxes, and to reduce their borrowings at City. Any remaining credit balance in their accounts, as shown in a private record maintained by petitioner, was not withdrawn but was allowed to remain in Yardley Industries and Hill Companies. With the exception of Jacobson and petitioner, none of the above-mentioned parties rendered regular services to the business organization known as Yardley Industries and/or Hill Companies, or any subdivision thereof. These parties were periodically advised of the progress *192 of the business and were consulted generally by the petitioner with respect thereto in substantially the same manner as was his custom prior to the agreement of December 31, 1943. On or about December 31, 1944, a further agreement was entered into between the same parties which purported to change the name of the partnership created under the prior agreement from Yardley Industries to Hill Companies and to recognize a change in the proprietary interests of the respective partners in the partnership to the following: Frederick B. Hill, Jr.
45%
Elizabeth G. Hill
25%
Walter E. Jacobson
4%
Mrs. James S. Gibson
12%
Frederick B. Hill, Sr.
7%
L. Draper Hill
7%
On or about March 31, 1944, a journal entry was made upon the general records of Yardley Industries referring to the purchase of a one-partner interest therein by Elizabeth G. Hill, which journal entry records the purported payment of $46,250 in cash or other satisfactory evidence of indebtedness. This journal entry was thereafter cancelled on the books with a notation that it was personal and therefore not properly a part of the general records of the business. Six ledger sheets were made a part of the *193 general records of Yardley Industries between March 31, 1944, and June 30, 1944, which reflected the existence of the partnership and the capital accounts of the respective partners. On or about August 1, 1944, these sheets were extracted from the general records of Yardley Industries and were never replaced therein. No other entry relating to Elizabeth G. Hill or any other partner appeared or appears upon the general records of Yardley Industries or Hill Companies. A private record was maintained by Frederick B. Hill, Jr. purporting to set forth the partnership capital accounts of himself, Elizabeth G. Hill and the other partners. Such records disclosed the original capital account of each partner and withdrawals or additions thereto through 1951, except as to Walter E. Jacobson who withdrew from participation as a partner in 1950. Prior to 1944 and thereafter three bank accounts were maintained in the names of and for the use of the various businesses known collectively as Yardley Industries and Hill Companies. From time to time, when in the judgment of petitioner, such business accounts contained funds in excess of the needs of the respective businesses, withdrawals were made *194 by petitioner and deposited in various accounts standing in his personal name. From time to time, when in the judgment of petitioner the accounts standing in the names of the various businesses lacked sufficient funds, withdrawals were made from petitioner's personal bank accounts and deposited to those of the various businesses. Petitioner was the only person whose signature was recognized to withdraw funds from his individual bank accounts. Walter E. Jacobson and petitioner were both authorized to sign checks on the company accounts. Petitioner maintained in his own name a bank account in the Ohio National Bank, in which from time to time a portion of the net earnings of the businesses were deposited and from which the cash distributions from the businesses were made to the partners. This account was used for no other purpose. On or about January 17, 1945, petitioner caused to be registered with the Secretary of State of Ohio the following trade names: Yardley Venetian Blind Company Yardley Industries Yardley Plastics Company S. & W. Plastic Moulding Company The applications were made and registrations issued in the name of "Frederick B. Hill, Jr." Between May 29, 1946, and *195 August 14, 1946, petitioner made application for registration of the following names with the United States Patent Office: S. & W. Miraplas Mirachrom Miralite All of these applications were made in the name of "Frederick B. Hill, Jr., doing business as S. & W Moulding Company", three being thereafter corrected to read as being made by Frederick B. Hill, Jr. On or about June 30, 1946, a further agreement was entered into between the same parties which, among other things, authorized transfer of Yardley Plastics Company (hereinafter called Yardley) and S & W Plastic Moulding Company (hereinafter called S & W), two of the ventures included in the partnership, to petitioner or to a corporation or corporations to be organized by petitioner; permitted petitioner or such corporations to use the names "Yardley", "S & W", and other names, for a specified royalty to Hill Companies; and changed the proprietary interests of the partners in the continuing partnership. On or about the same date, June 30, 1946, the property and assets used in the business of Yardley and S & W were transferred by the partnership to petitioner for their then book value of $366,415.30. The capital account *196 of petitioner was debited with this amount and immediately after the transfer the total assets of the partnership consisted of businesses having a book value of $95,481.91, together with an account receivable of $88,587.60 due to the other partners from the petitioner. The amount due from petitioner was reduced to $52,234.66 by December 31, 1946, and became a capital account in his favor of $41,651.83 by December 31, 1947, at which time the total assets of the partnership were $172,622.58. The transfer of the foregoing assets to the petitioner was effected as the best solution, in the interests of all concerned, of the serious financial problem with which the business was, at that time, faced. On or about July 1, 1946, petitioner caused to be organized two Ohio corporations known as Yardley Plastics Company and S & W Moulding Company to which were transferred all of the assets of Yardley and S & W, respectively, which had been distributed to him. The assets transferred to S & W, the corporation, by petitioner were in exchange for its issuance of 46 shares of its capital stock and two notes, one for $180,256.59, and the other for $66,300, which notes were subordinated to the claims *197 of creditors of the corporation. Petitioner also purchased five shares of stock for cash. The remaining 49 shares of stock of S & W, the corporation, were divided equally between Ralph Wycoff and Alistair Strachan, both of whom had previously been associated with Hill Companies in the operation of S & W, in satisfaction of Hill Companies' obligations to them as profit sharing associates. These two men also received notes from S & W, the corporation, in the amount of $31,850. A note was likewise given to Charles Ebner by Yardley, the corporation, in satisfaction of Hill Companies' obligation to him as a profit sharing associate of Yardley. The existence of a partnership between petitioner and other persons was not disclosed to the general public. City, the institution which financed the parties involved, knew the end for which the proceeds of the loans made by it were used. Income tax returns were filed on a partnership basis each year. None of the income distributed to the other parties has at any time been paid to, or used for, the personal benefit of petitioner. After the execution of the agreement of December 31, 1943, the duties of Jacobson were in no way different from those *198 he had prior thereto and while petitioner was operating as a sole proprietor. In all matters of policy, petitioner's word was final. Jacobson could do no more in this regard than make suggestions. We find as an ultimate conclusion of fact that the business organization known as Yardley Industries and/or Hill Companies was at all times relevant herein a valid, bona fide and legal partnership. Opinion VAN FOSSAN, Judge: Of the three issues raised in the petition upon which this action is based, two were abandoned by the petitioner and no evidence with regard thereto was introduced. Consequently, respondent's determination in so far as it relates to these questions is affirmed. There remains in dispute petitioner's allegation that respondent erred in not recognizing Yardley Industries and/or Hill Companies during the year under review as a partnership consisting of petitioner, his wife, his mother-in-law, his father, his brother and a business associate. The pertinent provisions of the Internal Revenue Code are sections 181 and 182 [1] which control the method for taxing partnership income and section 22 (a) [2] relating to the taxation of individual incomes. *199 The test for determining if, under a given set of facts, a partnership exists which is valid for tax purposes is whether the parties involved, acting in good faith and with a business purpose really and truly "* * * intended to join together in the present conduct of the enterprise. * * *" ; ; . The intention of the parties, their good faith, and business purposes in so joining together are conclusions of fact, , affirming , to be drawn from a consideration of "* * * the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent * * *." Our ultimate finding of fact is dispositive of the case. Prolongation of this opinion with a lengthy *200 discussion of the evidence leading us so to conclude would serve no useful purpose. Suffice it to say, that we have taken into account and thoroughly considered all of the evidence bearing upon the foregoing factors, the inferences and conclusions properly to be drawn therefrom. We have weighed the evidence tending to show the existence of the partnership against that tending to the opposite conclusion, and have found as a fact that the business relationship between petitioner and each of the other parties involved was that of partnership. Accordingly, we here so hold. Respondent's determination to the contrary is reversed. Decision will be entered under Rule 50. Footnotes
1. SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b). ↩
2. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *↩